# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Crim No. S25 15 Cr. 537 (VEC

vs.

KAREEM LANIER,
Petitioner.

_____/

**MEMORANDUM AND POINTS IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255(f)(3); and/or MOTION TO PETITION FOR COMPASSIONATE RELEASE AND REDUCTION OF SENTENCE UNDER THE FIRST STEP ACT OF 2018**

**COMES NOW**, the defendant Kareem Lanier, (herein after "Lanier" or "Defendant") and appearing pro-se, and respectfully requests that this Honorable Court consider his Motion to Vacate, Set Aside or Correct Sentence; and/or Reduction of Sentence under the First Step Act of 2018. In support thereof, the following is stated:

**RELEVANT BACKGROUND**

The Petitioner has written this request for parties who are familiar with the facts, procedural history, and the scope of the instant petition(s). Thus, he will recount only those statements and facts necessary.

On February 15, 2017, the Government unsealed a Superseding Indictment, numbered S16 15 Cr. 537 (VEC), containing the following counts against Lanier: (1) a racketeering conspiracy count charging Lanier with agreeing with others from in or about 2005 through in or about August 2016 to participate in the criminal racketeering enterprise known as the "Young Gunnaz" or "YGz" gang through a

pattern of racketeering activity including his commission of the murder of Dykeem Etheridge by shooting and killing Etheridge in the Bronx on or about January 24, 2011 and other specified overt acts in furtherance of the conspiracy in violation of Title 18, United States Code, Section 1962(d), which carried a maximum potential sentence of life imprisonment; (2) a substantive murder in aid of racketeering count charging Lanier with murdering Etheridge in the Bronx on or about January 24, 2011 in order to gain entrance into, or maintain, or increase his position in the YGz racketeering enterprise in violation of Title 18, United States Code, Section 1959(a)(1), which carried a mandatory minimum sentence of life imprisonment and a maximum potential sentence of death; (3) a substantive firearms count charging Lanier with causing the murder of Etheridge through the use of a firearm during and in relation to a federal crime of violence, namely the murder of Etheridge in aid of racketeering, in violation of Title 18, United States Code, Section 924(j)(1), which carried a mandatory minimum sentence of five years in prison and a maximum potential sentence of life in prison that would be required to run consecutively to any other sentence imposed; and (4) a firearms count charging Lanier with using and carrying firearms during and in relation to a federal crime of violence, namely the YGz racketeering conspiracy, several of which were brandished and discharged on multiple occasions, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii) and (iii) as well as 924(c)(1)(C)(i) and 2, which carried a mandatory minimum sentence of twenty-five years in prison and a maximum potential sentence of life in prison that would be required to run consecutively to another other sentence imposed.

**Lanier's Guilty Plea to the S25 Superseding Information:**

On May 11, 2017 — about two months before Lanier was scheduled to proceed to trial on July 17, 2017. Rather than face a trial on all the charged against him in the S16 Indictment — in which the Government would have been able to introduce powerful evidence of Lanier's guilt, exposing him to a mandatory minimum term of life (plus thirty years) in prison following a trial conviction on all counts — Lanier reached a plea agreement with Government that he signed on June 12, 2017.

Under the plea agreement, Lanier agreed to plead guilty to all of the charges set forth in a Superseding Criminal Information, numbered S25 15 Cr. 537 (VEC), containing the following counts against Lanier: (1) Count One was a firearms count charging Lanier with using and carrying on or about January 24, 2011 a firearm, which was discharged, during and in relation to a federal crime of violence

— "namely, [Lanier's] murder of Dykeem Etheridge by shooting and killing Etheridge in . . . the Bronx, New York for the purpose of maintaining and increasing [Lanier's] position in a racketeering enterprise styled as a street gang known as the 'Young Gunnaz' or 'YGz,' that engaged in a pattern of violent racketeering activities including murders, attempted murders, robberies, and other crimes of violence (the 'YGz Racketeering Enterprise'), in violation of Title 18, United States Code, Sections 1959(a)(1) and 2" (S25 Information at ¶ 1) — and with possessing that firearm, which was discharged, in furtherance of that federal crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2, which carried a mandatory minimum sentence of ten years in prison and a maximum potential sentence of life in prison that was required to run consecutively to another other sentence imposed; (2) Count Two was a firearms count charging Lanier with aiding and abetting the using and carrying on or about July 3, 2011 of a firearm, which was discharged, during and in relation to a federal crime of violence — "namely, [Lanier's] participation in aiding and abetting the attempted murder of Jamel Cobbs, a/k/a 'Murder Mel,' by encouraging and assisting another member of the YGz Racketeering Enterprise in shooting Cobs in an attempt to kill Cobbs . . . in the Bronx, New York for the purpose of maintaining and increasing [Lanier's] position in the YGz Racketeering Enterprise, in violation of Title 18, United States Code, Sections 1959(a)(5) and 2" (S25 Information at ¶ 2) — and with aiding and abetting the possession of that firearm, which was discharged, in furtherance of that federal crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(c)(1)(C)(i) and 2, which carried a mandatory minimum sentence of twenty-five years in prison and a maximum potential sentence of life in prison that was required to run consecutively to another other sentence imposed; and (3) Count Three charged Lanier with conspiring with others from in or about 2010 through in or about 2017 to breach the federal racketeering laws by participating in the YGz Racketeering Enterprise through a pattern of racketeering activity in violation of Title 18, United States Code, Section 371, which carried a maximum potential sentence of five years in prison.

The Plea Agreement thus reduced Lanier's sentencing exposure from a mandatory minimum of life (plus thirty years) in prison following a trial conviction on all of the counts in the S16 Indictment, to a total mandatory minimum sentence of thirty-five years in prison for Counts One and Two of the S25 Information. As part of his plea agreement, the Government and Lanier stipulated that the advisory United

States Sentencing Guidelines recommend a sentence of 40 years of imprisonment for Lanier, with a mandatory minimum of thirty-five years in prison that was required to run consecutively to any other term of imprisonment, including a prior five-year federal narcotics sentence that Lanier was serving at the time of his arrest in this case (the "Stipulated Guidelines Sentence"). The Government and Lanier agreed as part of the plea agreement not to seek a sentence above or below the Stipulated Guidelines Sentence, and the Government agreed to move to dismiss any and all open counts against Lanier at sentencing (including the counts in the S16 Indictment).

The plea agreement provided, however, that if Lanier's conviction following his plea of guilty under the plea agreement were later vacated for any reason, then any prosecution that was not time-barred by the applicable statute of limitations on the date of the signing of the plea agreement (including any counts that the Government had agreed to dismiss at sentencing pursuant to the plea agreement) may be commenced or reinstated against Lanier, notwithstanding the expiration of the statute of limitations between the signing of the plea agreement and the commencement or reinstatement of such prosecution.

On June 12, 2017, Lanier entered a plea of guilty pursuant to the plea agreement, in a proceeding before this Court that complied in all respects with Rule 11 of the Federal Rules of Criminal Procedure.

**Lanier's Sentencing**

On December 8, 2017, this Court sentenced Lanier to a total of 40 years in prison consecutive to his prior five-year federal narcotics sentence. Specifically, the Court sentenced Lanier to ten years of imprisonment on Count One of the S25 Information, twenty-five years of imprisonment on Count Two of the S25 Information, and five years of imprisonment on Count Three of the S25 Information, with the sentence on Count One to run consecutively to Lanier's prior five-year narcotics sentence and the sentence on Count Three, and the sentence on Count Two to run consecutively to the sentence on Count One.

Lanier is presently incarcerated at the United States Penitentiary in Atwater serving his sentence in this case, with an expected release date of September 23, 2048.

## PRELIMINARY STATEMENT

As a preliminary matter, Lanier respectfully requests that this Court be mindful that pro se pleadings are to be construed liberally. See, Estelle v. Gamble, 429 U.S. 97,106 (1976); and Haines v. Kerner, 404 U.S. 519, 520 (1972) (same).

### Lanier's Section 2255(f)(3) Claim:

The Count at issue in this habeas motion is Count Two. As part of the terms of the plea agreement, Count One requires a mandatory minimum term of 120 months to be imposed consecutively to any other sentence resulting from Counts Two and Three. Count Two requires a sentence of 300 months, to be served consecutively to Count One. On December 8, 2017, this Court sentenced Lanier to a total of 40 years in prison to run consecutive to-his prior five-year federal narcotics sentence e

Specifically, the Court sentenced Lanier to ten years on imprisonment on Count One, twenty-five years of imprisonment on Count Two, and five years of imprisonment on Count Three---all to run consecutive to each other.

Here, Lanier relies on the Supreme Court1s recent decision in United States v. Taylor, 142 S. Ct. 2015 (June 22, 2022), to meet the AEDPA limitation period. In Taylor, the Supreme Court held that Attempted Hobbs Act Robbery does not qualify as a "crime of violence" under § 924(c)'s Force Clause because no element of the offense requires proof that the defendant used, attempted to use, or threatened to use force.

The Supreme Court addressed the elements of the crime of "attempt" and found that such elements do not categorically match the force clause elements of § 924 (c)(3)(A). Taylor's decision is retroactively applicable to cases on collateral review; thus, this Court has jurisdiction to adjudicate Lanier's claim and grant relief.

### Factual Basis of Claim

(i). Lanier suffers from a 300-month sentence, pursuant to his plea to Count Two. (

(ii). The judge, during the plea colloquy in the instant case, advised Lanier of the following, pursuant to what he was pleading to as to Count Two of the Superseding indictment:

In order to secure a conviction for Lanier's § 924(c), the Government only needs to prove an intention to commit the complete crime, along with a substantial step

towards achieving that objective. In this instant case, Lanier was convicted of Count Two for a violation of 18 U.S.C. §§ 1959(a)(5), 924(c), and 2. Section 1959(a)(5) criminalizes "attempting or conspiring to commit murder or kidnapping."

(iii) The judge advised Lanier that he was pleading to a violation of 924(c); in which Lanier stated that he understood.

In order for Lanier's conviction for Count Two to pass the constitution's muster, § 1959(a)(5) must be a categorical "crime of violence" within the meaning of § 924(c)(3) Force Clause. On June 22, 2022, the Supreme Court held that "an attempt" is not a categorical crime of violence, for the purpose of §924(c).

On the merits of Mr. Lanier's argument that, (ii) Attempted Murder under§ 1959(a)(5) is not a categorical crime of violence under§ 924(c) force clause and Taylor, this Court should also find that Count Two conviction and sentence is unconstitutional and illegal. In absence of a valid predicate "crime of violence," Count Two's§ 924(c) is a nullity.

To obtain a conviction under § 1959(a)(5) (e.g., attempting or conspiring to commit murder), the government is not required to prove that Lanier used, attempted to use, or threatened to use force against the person of another. Section 1959(a)(5) does not require proof of any of the elements§ 924(c)(3)(A) demands. Accordingly, Lanier may not be lawfully convicted and sentenced under§ 924(c) to the 25 years, in light of Taylor.

**Legal Basis for Instant Claim**

(i). In Taylor the Supreme Court recently stated that the elements clause did not allow for attempted offenses. Previously, in Davis the Supreme Court ruled that Conspiracy offenses were no longer violent pursuant to the Residual Clause.

(ii). As Stated above Lanier pled guilty under § 924(c), (defined in 924(c)(3)(A)); in violation of § 1959(a)(5) (e.g., attempting or conspiring to commit murder).

Because the factual basis of the plea in the instant could not stand, based on the judge's inquiry and the government's own concession that there was no intent, accept under a theory of felony murder.

The Supreme Court, Justice Kennedy, held that Supreme Court's Johnson decision, which held that the definition of prior "violent felony" in the residual clause of the ACCA was unconstitutionally vague under due process principles, announced a

substantive rule that applied retroactively on collateral review. Welch v. U.S., 578 U.S. 120 (U.S.,2016). Likewise, Lanier respectfully argues that Welch, in the instant case, triggers § 2255(f)(3). Taylor was decided June 21, 2022, Lanier is well within the one-year limitations period set out in the § 2255 statute. Taylor, which dealt with the elements clause and serves a the first of two definitions under § 924(c), shares no distinction from the residual clause as a substantive matter of retroactivity.

(iii). Because Lanier pled out and was sentenced under § 924(c) to an attempt or conspiracy crime, according to the government's own theory, Count Two cannot stand to support a sentence of 300 Months.

The instant case is similar to United States v. Robinson, No. 1:97-cr-05129-JLT (E.D. Cal. 2022), (See a copy of attached hereto). Lanier's conviction for Count Two, post-Taylor, is illegal and he is actually innocent of such crime.

In Taylor, the Supreme Court held that "[a]ttempted Hobbs Act Robbery does not satisfy the elements clause of § 924(c), because it   does not require use, attempted use, or threatened use of physical force against another person or his property. The Court elaborated on the elements of a crime of attempt, and in detail, expressed its findings that "an attempt can be committed without 'use, attempted use, or threatened use of force.'"

In the context of the Hobbs Act, the Supreme Court held that the least culpable act which could constitute attempt would not satisfy the Act's element's clause. Taylor, 142 S. Ct. at 2022. Accordingly, a defendant could be found guilty of "attempt murder" under 18  U.S.C. §1959(a)(5) and, like in Taylor, this conviction could be proved without a showing of a use, attempted use, or threatened use of force.

The Supreme Court's decision in Taylor counsels that an inchoate crime as attempt murder is no longer a categorical crime of violence within the meaning of § 924(c)'s force clause. And, although the Taylor decision addressed Attempted Hobbs Act robbery, the rule extends to all attempted crimes.

This claim was unripe until the Supreme Court pronounced its retroactive rule in Taylor, supra., Prior to Taylor, the Second Circuit had ruled that attempted Hobbs Act robbery was a crime of violence within§ 924(c)(3) force clause. However, after the Taylor rule overturned circuit precedents, Lanier's conviction for Count Two is now unconstitutional and illegal.

Actual prejudice occurred on the basis that Lanier was sentenced to an additional 25 years to be served consecutive with his other sentences. The excess of 25 additional years satisfies the "Prejudice" prong. Given the rule in Taylor, Lanier's violation of §1959(a)(5) was not a crime of violence.

## Lanier's Compassionate Release Claim

Lanier 's total sentence of 40-years (without parole), is extraordinary. He has been in prison for approximately 10 years for his crime (if you consider good-time).

Today there is no reason for continuing to warehouse Lanier. Because people grow, mature and evolve, and because conditions and circumstances change, it is virtually impossible to make sound decisions when first imposing sentence about precisely how long someone should spend behind bars. But that is exactly how the federal criminal justice system works. Judges are required to act as if they are omniscient and the prison terms they impose are – for all intents and purposes – final. Congress did, when its abolished parole through passage of the Sentencing Reform Act of 1984, invest the U.S. Bureau of Prisons (the "BOP") with the discretion to revisit and review the sentences imposed on a few narrow categories of defendants. But the BOP largely has not exercised that authority, even for defendants who were sentenced decades ago, even for defendants serving exceedingly long prison terms or even for defendants for whom continued confinement can no longer readily be justified on moral or utilitarian grounds.

Responding to concerns that the BOP was not making adequate use of its legal authority to seek sentence reductions for qualified defendants, Congress recently vested federal judges with the power to do what they were previously prohibited from doing absent a motion from the Director of the BOP. Specifically, changes to 18 U.S.C. § 3582(c)(1)(A) contained in the First Step Act (which was signed into law on December 21, 2018) authorize courts to reduce the prison term – even to time served – of any defendant if it finds that "extraordinary and compelling reasons" warrant such a reduction. In other words, federal judges are now empowered to take a "second look" at the sentences imposed on defendants who are deserving and worthy of a "second look."

Lanier does not dispute that his offense was decidedly serious. He is deserving of a "second look" and a reduced sentence. And, as detailed below, this Court is now authorized to take such a "second look" and empowered to reduce Lanier sentence (even to time served).

Congress made the foregoing changes in an effort to expand the use of 18 U.S.C. §
3582(c)(1)(A) in the reduction of sentences that no longer serve the penological
objectives of the federal criminal justice system. Thus, today, federal judges have
the power to order sentence reductions and, in doing so, are authorized to reduce
prison terms (even to time served) on the full array of grounds reasonably
encompassed by the phrase "extraordinary and compelling reasons." Put
differently, relief under 18 U.S.C. § 3582(c)(1)(A) is now available to any
defendant whose conditions have changed such that a fair-minded person could
conclude that "extraordinary and compelling" reasons for a sentence reduction
exist. United States v. Cantu-Rivera, Case No. 89-CR-204, 2019 WL 2578272
(S.D. Tex. June 24, 2019) is instructive with regard to this Court's newfound
authority to reduce sentences based on "extraordinary and compelling reasons"
(even if those reasons do not relate to medical condition, age or family
circumstances). Initially, the court in Cantu-Rivera explained that "[t]he First Step
Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow district courts to modify
sentences of imprisonment upon motion by the defendant if the defendant has fully
exhausted all [BOP] administrative rights . . . or 30 days from the receipt of such a
request by the warden of the defendant's facility, whichever is earlier." Id. at *1
(internal quotation marks omitted). It then reduced that defendant's life sentence
(for conspiracy to possess with intent to distribute in excess of five kilograms of
cocaine) to time served (after service of more than 30 years imprisonment) based
principally on "the extraordinary degree of rehabilitation Mr. Cantu-Rivera has
accomplished during the 30 years he has been incarcerated," including "extensive
educational achievements," such as "completion of over 4,000 hours of teaching
while in federal prison to complete a Teaching Aide apprenticeship with the
Department of Labor," his "service as a teaching assistant in several prison
facilities for high-school equivalency and English-as-a-Second-Language
programs" and "his service in the BOP's suicide watch program, helping to care
for inmates placed in solitary confinement due to suicide attempts." Id. at *2.

Similarly, in United States v. Cantu, Case No. 05-CR-458, 2019 WL 2498923 (S.D.
Tex. June 17, 2019) the court properly noted that "[a] court may now," pursuant to
18 U.S.C. § 3582(c)(1)(A), "modify a defendant's sentence if it finds on either the
BOP's or the defendant's motion that 'extraordinary and compelling reasons
warrant such a reduction' and 'such a reduction is consistent with applicable policy
statements issued by the Sentencing Commission.'" Id. at *1. It then reduced that
defendant's 290-month sentence (which had previously been reduced to 210

months based on Amendments 782 and 788 to the Guidelines) to time served (after service of more than 14 years imprisonment) based principally on his medical condition, even though he "ha[d] not presented evidence that his reasons are extraordinary and compelling under the three explicitly defined reasons" set forth in Application Note 1 to Section 1B1.13 of the Guidelines. Id. At *3.

And, in United States v. McGraw, Case No. 02-CR-00018, 2019 WL 2059488 (S.D. Ind. May 9, 2019) the court stated that the First Step Act's modification of 18 U.S.C. § 3582(c)(1)(A) "now provides an avenue for a defendant to seek a [sentence reduction directly] from the Court" and that "courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." Id. at *1. It then reduced that defendant's life sentence (for possession with intent to distribute methamphetamine) to time served (after service of more than 17 years imprisonment) based principally on "his serious medical conditions," even though he had a long criminal history and had occupied a "leadership" position in the Diablos motorcycle gang. Id. at 2-6.

In this petition, Lanier claims he has done everything in his power to rehabilitate himself as demonstrated by his genuinely exceptional accomplishments and meritorious prison record. That he does not seek to justify, diminish, or detract from the seriousness of his offenses. And he unequivocally accepts responsibility for his criminal conduct.

There is no excuse for Lanier's past actions, today he understands, and he has made a conscious decision to head down the road of self-betterment. In his pursuit of rehabilitation, he made exceptional strides in bettering himself. Lanier's record of rehabilitation can be considered extraordinary and spells out what Congress intended when it stated that a sentence should be sufficient but not greater than necessary to achieve the goals of sentencing one of which is rehabilitation. He has completed numerous rehabilitative programs. Lanier has also maintained steady employment while in prison as well with excellent work reports, (as reported my BOP staff).

In sum, Lanier was given an unusually long sentence for his crime, and he has compiled a remarkable record of rehabilitation showing that if released, he is not a danger to the public.

**Reasons for Motion**

Coupled with the changes in the law (and the fact that Lanier is filing this motion pro-se); With More Than 300,000 Prisoners Locked Down. Prisoners struggle to get their medical records and the necessary documents for exhaustion of remedies. Inmates are locked in their cells 23 hours, relying on in-person, confidential meetings with staff (i.e., counselors, case managers, unit officers, or lawyers) is extremely difficult, although not impossible. The law library is closed, no copy machines are available to make duplicate copies, the commissary is often closed, thus making stamp purchase impossible, and untimely mailing services, all of these circumstances making the exhaustion of Administrative Remedies nearly impossible. See, Carmona v. U.S. Bur. of Prisons, 243 F.3d 629, 634 (2d Cir. 2001) (while prior to filing a habeas corpus petition under § 2241 "federal prisoners must exhaust their administrative remedies [w]hen, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust").

The Federal Bureau of Prisons (BOP) is now on rigid national lockdown due to quarantine constraints amid the rapidly escalating public health crisis COVID-19. Therefore, Lanier does not have the opportunity to follow all the rules, procedures, and make all deadlines. Notably, in this case Lanier is considered to have exhausted all administrative remedies in an application for compassionate release following a denial by the BOP. Lanier filed a compassionate release request through appropriate channels at the BOP on May 26, 2020. His request was denied on June 23, 2020. Thus, the motion is now properly before this Court.

This Court should consider the motion to in light of all the new law in support of the instant motion. As this motion is made in good faith.

## DISCUSSION

This case presents the urgent issue of defendants' eligibility for reduction in sentence (colloquially known as "compassionate release") following the changes to § 3582(c)(1)(A) by the First Step Act of 2018 ("FSA").

The Second, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and D.C. Circuits have held that district courts are free to exercise discretion to grant compassionate release to defendants for any "extraordinary and compelling" reason, so long as the reduction is "warranted" after reconsideration of the § 3553(a) factors.

That said this motion is crucial to promote nationwide uniformity in this important aspect of federal sentencing. Since the FSA expanded compassionate release, courts nationwide have granted thousands of reductions. See now, United States v. Marcussen, 15 F.4th 855, 859 (8th Cir. 2021), so we need not address whether § 1B1.13 remains applicable. United States v. Loggins, 966 F.3d 891, 892-93 (8th Cir. 2020); and United States v. Rodd, 966 F.3d 740, 747 (8th Cir. 2020).

Compassionate release gives courts an opportunity to take a second look at sentences to account for unusual and changed circumstances. This consideration—sure to arise thousands more times as individuals make use of the FSA's recently enacted provisions—is well within judges' core competence. As the Commission has noted, "[t]he court is in a unique position to determine whether the circumstances warrant a reduction." U.S.S.G. § 1B1.13 & comment. (nn.1, 4); U.S.S.G. Amend. 799 (Nov. 1, 2016).

At sentencing, judges consider the nature and circumstances of the crime committed, the defendant's role in the offense, and the criminal history of the defendant, among other things. See 18 U.S.C. § 3553; Federal Sentencing Guidelines Manual (2018). They rely on guidance reflecting society's current understanding of criminal culpability and punishment. But what judges can't confidently measure at sentencing is an individual's capacity for change. See Shon Hopwood, Second Looks and Second Chances, 41 CARDOZO L. REV. 83, 85 (2019).

Even people who commit serious crimes are not beyond rehabilitation. See, e.g., United States v. Jackson, 3:90-cr-85-MOC-DCK, 2021 WL 2226488, at *5-6 (W.D.N.C. June 2, 2021) (numerous letters of recommendation from BOP staff praising "the level of growth and maturity that I have found rare in this environment and in my opinion very commendable"); Michael Gordon, After 30 years, have 3 NC crack gang members repaid their debt? A judge to decide., Charlotte Observer, May 12, 2021, https://bit.ly/3ehjXzw; United States v. Clausen, No. Cr. 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (finding "remarkable record of rehabilitation" despite "de facto life sentence" documented by seventeen letters of recommendation from BOP staff). Professor Hopwood himself was convicted of bank robbery and served a lengthy sentence. But he later graduated from law school, clerked on the D.C. Circuit, and became a member of the Georgetown Law Center faculty and the Bar.

The availability of a second chance through compassionate release can incentivize individuals serving seemingly hopeless sentences to rehabilitate themselves in ways they might otherwise never have attempted. At sentencing, federal judges also cannot predict how society's attitudes toward punishment and culpability may change. Over the last few decades, Congress has enacted several measures that reduce sentences prospectively. See, e.g., Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372 (reducing threshold for crack cocaine sentences); First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221-5222 (reducing mandatory minimum sentence for first offenders of 18 U.S.C. § 924(c) offenses). As Congress legislates to account for changed views on punishment, many individuals are left serving federal prison sentences far longer than society deems necessary for the same conduct today. Compassionate release allows judges to make individualized determinations for selecting persons when Congress has declined to make sentencing changes broadly retroactive. Allowing judges, the discretion to recognize extraordinary and compelling reasons beyond those articulated in the Statement permits, for deserving individuals, the harmonization of new views on criminal punishment with old sentences. This case presents an ideal vehicle for the Court to provide needed guidance to incarcerated persons and practitioners hoping to take advantage of the FSA's opportunity for second chances. It is vital that practitioners and their clients understand what circumstances judges may consider extraordinary and compelling. It is equally crucial that persons across the nation—no matter their place of sentencing—have equal grounds of consideration.

**Exhaustion of Administrative Remedies**

Lanier filed a request with the prison for reduction of sentence on (XXXXXXXXXXX). Lanier claims he has received no response from the facility.

For purposes of this motion, the United State stipulates that 30 days have passed since Lanier filed his request for administrative remedies so the Court may rule on the merits of the motion.

**Section 3582:**

The Sentencing Commission concluded that "extraordinary and    compelling reasons" include those other than medical, age-related, or family circumstances:

The question whether compassionate release may be based solely on a change in sentencing law is a matter of statutory interpretation. A grant of compassionate

release requires consideration of all 3553(a) factors, including post-conviction conduct. Lanier' position argues that the changes to 18 U.S.C. § 3582(c)(1)(A)(i) made by the First Step Act have vested this Court with authority to identify the extraordinary and compelling circumstances that may warrant a sentence reduction.

Prior to the enactment of the First Step Act, courts could consider compassionate release only upon motion by the Bureau of Prisons. United States v. McCoy, ___ F.3d ___, 2020 U.S. App. LEXIS 37661, at *6 (4th Cir. Dec. 2, 2020) (citing 18 U.S.C. § 3582(c)(1)(A) (2012)). Since its enactment, "the Sentencing Commission has not updated its policy statement on compassionate release." United States v. Booker, 976 F.3d 228, 233-34 (2d Cir. 2020). Consequently, "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason that a defendant might raise.'" McCoy, 2020 United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)) U.S. App. LEXIS 37661, at *27 (alteration and emphasis in original) (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). In United States v. Jones, -- F.3d --, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020) and United States v. Gunn, -- F.3d. --, No. 20-1959, 2020 WL 6813995 (7th 2 Cir. Nov. 20, 2020). In those opinions, the Sixth Circuit and Seventh Circuit joined the Second Circuit and held that U.S.S.G § 1B1.13 is not "applicable" to a § 3582(c)(1)(A) motion filed by a defendant, as opposed to the Bureau of Prisons.

The decisions in some districts to this effect are United States v. Clausen, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (Pappert, J.) (the court will reduce a 213-year stacked 924(c) sentence based on the change in law and the defendant's "remarkable record of rehabilitation"); and United States v. Pollard, 2020 WL 4674126 (E.D. Pa. Aug. 12, 2020) (Beetlestone, J.) (compassionate release is available to address stacked 924(c) terms; the sentence is reduced to the 168-month term that would apply today for two 924(c) brandishing offenses. This is supported by the statute's history.

In United States v. Jones, -- F.3d --, No. 20-3701, 2020 WL 6817488 (6th Cir. Nov. 20, 2020) and United States v. Gunn, -- F.3d. --, No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020). In those opinions, the Sixth Circuit and Seventh Circuit joined the Second Circuit, see United States v. Brooker, 976 F.3d 244 (2d Cir.

2020), and held that U.S.S.G § 1B1.13 is not "applicable" to a § 3582(c)(1)(A) motion filed by a defendant, as opposed to the Bureau of Prisons. As such, the Sixth Circuit and Seventh Circuit agreed that district courts are free to independently determine what constitutes an extraordinary and compelling reason for a sentence reduction under the statute, without reference to the policy statement.

In Jones, the Sixth Circuit concluded that § 1B1.13 is not applicable to a defendant's motion after observing that the policy statement "does not reflect the First Step Act's procedural reforms to compassionate release," and finding that enforcing the policy statement as written is inconsistent with Congressional intent. 2020 WL 6817488, at *8. The court therefore concluded that district judges "have full discretion to define 'extraordinary and compelling' reasons without consulting . . . § 1B1.13." Id. at *9.

The Seventh Circuit similarly held in Gunn that "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release," and so any discretionary decision by a district judge "is 'consistent with' [the] nonexistent policy statement." 2020 WL 6813995, at *2. It rejected the Department of Justice's argument "that this [reading] leaves district judges free to invent their own policies about compassionate release," explaining that those judicial decisions would be "subject to deferential appellate review." Id.

"[T]he First Step Act does not obligate a district court to consider post-sentencing developments," but "a district court retains discretion to decide what factors are relevant as it determines whether and to what extent to reduce a sentence." United States v. Brooker, 975 F.3d 84, 92 n.36 (2nd Cir. 2020).

The Court should allow for full review of information, that is, in making findings related to sentencing information. Lanier is entitled to an opportunity to present objections to additional sentence determinations, and the application of sentence enhancements that were used to calculate the amended guidelines and served as part of the court's renewed consideration of § 3553(a) factors. See, United States v. Boulding, 960 F.3d 774, 783–84 (6th Cir. 2020) ("While 'complete review' does

not authorize plenary resentencing, a resentencing predicated on an erroneous or expired guideline calculation would seemingly run afoul of Congressional expectations" thus requiring some form of participation of the parties to insure the reliability of the determination.) Boulding recognized, as a panel in Lanier has, that a district court has discretion to consider all relevant factors. Boulding at 783; United States v. Lanier at 975 F.3d 84, 92 n. 36.

In Boulding even after the district court conducted a "considered analysis", correctly compared the guideline calculation at the original sentencing with the amended guideline range as it existed at resentencing and evaluated the § 3553(a) factors anew, including Boulding's post-sentencing behavior as part of that inquiry, the appellate court vacated the sentence and remanded to provide Boulding with an opportunity to present his objections to its calculation of his amended guideline range and in this respect because the denial of that opportunity by the court fell short of the review envisioned by the First Step Act. Boulding, 960 F.3d at 784.

The instant case is similar to United States v. Zullo, supra., defendant Jeremy Zullo filed a pro se motion requesting a sentence reduction under the First Step Act and Compassionate Release. Unlike traditional grounds defendants typically raise in their motions for relief under the First Step Act and Compassionate Release, defendant Zullo requested a sentence reduction based on the following non-traditional grounds, i.e., extraordinary and compelling reasons: (1) his 15-year sentence was too long; (2) he was only 17 years old at the time of the offense; (3) his lack of any prior criminal record; and (4) a breach of the plea agreement by the government. Id.

In response to defendant Zullo's motion, the Government argued that Compassionate Release should be denied because it would be an abuse of discretion, if the district court granted a sentence reduction on the non-traditional grounds that defendant Zullo raised in his motion. In rejecting the Government's argument, the Second Circuit found that, as a matter of law, a district court would not abuse its discretion by granting Compassionate Release on non-traditional grounds because a district court has broad discretion in the area of considering all sentencing matters. See, United States v. Cavera, 550 F.3d 180, 188 (2nd Cir., 2008) (en banc) (noting a district court's "very wide latitude" in sentencing).

In sum, the majority of district courts to address this issue have found the authority to grant a reduction in sentence under the catchall provision, and indeed many have done so based on the same "extraordinary and compelling reasons" that the district

court found present in United States v. McCoy, ___ F.3d ___, 2020 U.S. App.
LEXIS 37661, at *6 (4th Cir. Dec. 2, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)
(2012)); United States v. Day, No. 1:05-cr 460-AJT, ECF No. 257 at 23–24 (E.D.
Va. July 22, 2020) (holding that the "gross disparity" between the sentence the
defendant received and the sentence he would receive under the law today
qualified as an extraordinary and compelling reason for compassionate release);
United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *15 (E.D. Pa.
July 6, 2020)( finding that "[b]ecause the Sentencing Commission has not
amended its policy statement or commentary after the passage of the First Step
Act, and Note 1(D) contradicts the First Step Act's amendment to section
3582(c)(1)(A)(i), [district courts] may independently determine extraordinary and
compelling reasons in line with the rest of the Commission's commentary not
rendered contradictory to federal law."); United States v. Quinn, No. 3:91-CR-
00608, 2020 WL 3275736, at *4 (N.D. Cal. June 17, 2020) (joining "numerous
other courts" and holding that the First Step Act empowered district courts to
consider "enormous sentencing disparit[ies] created by subsequent changes to
federal sentencing law" as an "extraordinary and compelling reason" for
compassionate release); United States v. Lott, No. 95-CR-72, 2020 WL 3058093,
at *2 (S.D. Cal. June 8, 2020) ("[T]he Court finds that [the sentencing guideline]
provisions are not a limitation upon the Court's ability to determine whether a
defendant has presented extraordinary and compelling reasons for a sentence
reduction under 18 U.S.C. § 3582(c)(1)(A)"); United States v. Scott, No. 95-CR-
202, 2020 WL 2467425, at *3 (D. Md. May 13, 2020) ("While Sentencing
Commission and BOP criteria remain helpful guidance, the amended §
3582(c)(1)(A)(i) vests courts with independent discretion to determine whether
there are "extraordinary and compelling reasons" to reduce a sentence."); United
States v. Arey, No. 5:05-CR- 00029, 2020 WL 2464796, *4 (W.D. Va. May 13,
2020) (the First Step Act revised § 3582(c) to vest the court with "independent
discretion" to find extraordinary and compelling circumstances that warrant a
reduction of sentence); United States v. Marks, No. 03-CR-6033L, 2020 WL
1908911, at *17 (W.D.N.Y. Apr. 20, 2020); United States v. McPherson, No. 94-
CR-570, 2020 WL 1862596, at *4 (W.D. Wash. Apr. 14, 2020); United States v.
Wade, No. 2:99-CR-00257, 2020 WL 1864906, at *5 (C.D. Cal. Apr., 13, 2020)
("A growing number of district courts . . . have concluded that, in the absence of
applicable policy statements, courts can determine any extraordinary and
compelling reasons other than those delineated in U.S.S.G. § 1B1.13 warrant
sentence modification.") (citations omitted); United States v. Young, No. 2:00- CR-

00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (determining that courts "have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary and compelling reasons"); Maumau, 2020 WL 806121, at *4 (finding that "[u]nder the First Step Act, it is for the court, not the [BOP], to determine whether there is an 'extraordinary and compelling' reason to reduce a sentence"); Ebbers, 432 F. Supp. 3d at 433 n.6 ("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with the courts. Deferring to the BOP would seem to frustrate that purpose"); United States v. Urkevich, No. 8:03-CR-37, 2019 WL 6037391, at *1 (D. Neb. Nov. 14, 2019) ("The First Step Act also amended 18 U.S.C. § 3582. In Section 603 of the Act, congress amended § 3582(c)(1)(A) to permit defendants to move a sentencing court for modification of sentence"); United States v. Cantu-Rivera, No. CR H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019) (finding the court had the authority to determine that the defendant was entitled to relief under the catch-all provision in the commentary to § 1B1.13).

**Authority to reduce minimum sentence on a Compassionate Release motion:**

Congress has spoken, and this time it has given trial judges broad authority – indeed it has imposed a statutory duty, upon a defendant's motion– to conduct an individualized review of the defendant's case for extraordinary and compelling circumstances that call out for correction. See United States v. Brooker, 976 F.3d 228, 237-38 (2nd Cir., 2020) (holding that a court should consider "all possible reasons for compassionate release", including the "injustice of [a defendant's] lengthy sentence"). See e.g., Lockerbie Bomber that bomb Pan Am Flight 103 killing 270 people 189 of them Americans served only 8-years and was released. See, United States v. Haynes, 456 F. Supp. 3d 496 (2020).

It is undisputed that the express language of the First Step Act, which creates the courts' ability to modify a past sentence based on extraordinary and compelling reasons, contains no express prohibition on granting compassionate release to inmates who are serving a mandatory minimum sentence. Furthermore, this Court and others have routinely granted compassionate release to inmates serving a mandatory minimum sentence and have declined to read such a prohibition into the statute. In Brooker, the Second Circuit reversed the lower court's denial of the inmate's compassionate release motion even though the inmate was serving a mandatory minimum sentence. 976 F.3d 228 (2nd Cir., 2020).

Shortening Lanier' sentence does not undermine the seriousness of the offense, or fail to respect the law, provide just punishment, or adequately deter criminal conduct. In sum, Lanier's sentence was a product of misinterpretation of the law and under today's sentencing scheme, the Court would not have the authority to give him such a long and harsh sentence. Additionally, courts have found that compassionate release for defendants who have served the significant majority of their sentences does not undermine sentencing goals. See, e.g., United States v. Clark, 97 Cr. 817 (DC), at *10-11 (S.D.N.Y. Mar. 18, 2021) ("shortening Mr. Clark's sentence does not undermine the seriousness of the offense, or fail to respect the law, provide just punishment, or adequately deter criminal conduct..., Mr. Clark's sentence was a product of the then-mandatory Sentencing Guidelines and under today's sentencing scheme, I would not have given him such a long and harsh sentence.").

Additionally, defendants whose conduct is similar or worse than Lanier's who have committed murder, drug trafficking, racketeering, shootings, or even? terrorism offenses, routinely receive far less than life without parole sentences. Lanier received longer sentences than each of the defendants: United States v. Victor Alvarez, 1:93-cr-00181(PKC) (defendant sentenced to 30 years for seditious conspiracy, in Violation of 18 U.S.C. § 2384, bombing conspiracy, in Violation of 18 U.S.C. § 371, attempted bombing, in Violation of 18 U.S.C. §§ 844(i) and 2, interstate transportation of a firearm, in Violation of 18 U.S.C. §§ 924(b) and 2, and using and carrying a firearm in commission of a violent offense, in Violation of 18 U.S.C. §§ 924(c) and 2); United States v. Todd Labarca, 11- Cr-00012 (RMB) (defendant sentenced to 23 years for racketeering in Violation of 18 U.S.C. § 1962(c) based on predicate acts including conspiracy to murder Martin Bosshart, marijuana trafficking, ecstasy trafficking, extortion conspiracy, illegal gambling business and conspiracy to commit assault in Violation of 18 U.S.C. § 1959(a)(6) relating to the murder of Martin Bosshart), United States v. James Diaz, 17-Cr-21 (JWP) (defendant sentenced to 18 years for narcotics conspiracy and 18 U.S.C. §§ 924(c) who participated in the conduct that resulted in the death of Jose Morales and the shooting of Edwin Romero on December 11, 2016 as part of the narcotics conspiracy); United States v. James Capers, 12- Cr-293 (JWP) (defendant member of a violent drug gang convicted of racketeering conspiracy, conspiracy to distribute narcotics and 18 U.S.C. §§ 924(j) received 42 year sentence conduct including murdering a victim while he was holding his one-year-old child); United States v. Jaquan Walters, 15 Cr. 644 (AJN), (defendant convicted of narcotics

trafficking received 25 years for shooting and murdering victim over a marijuana debt); United States v. Peter, et al, 17-Cr-00054 (NRB) (defendants convicted of marijuana trafficking conspiracy and 18 U.S.C. §§ 924(c) and (j) received sentences of 23, 23 and 20 years for shooting and murdering a customer); Josnel Rodriguez (appeal is 17-3283cr) received 20 years from Judge Cote following 924(j) conviction for aiding and abetting murder at a cookout in the Bronx, Alvarado Dominguez (SDNY before Caproni) received well less than life for murder. Deandre Morrison in 18-cr-41 (DLC) received total of 318 months for narco conspiracy and RICO conspiracy and one of the predicates that he admitted to was murder. Terrill Staton in 15-cr-456 (NRB) received a total of 276 months for narco conspiracy and Hobbs Act robbery resulting in murder. Both, Tyvon Bannister in 17- cr-116 (BMC) received a sentence of 30 years based on a plea in which gov't and defense agreed and court ultimately accepted, that appropriate sentence was 30 years. Involved execution style murder.

Lanier's conduct is not materially different from the above cited defendants, yet his sentence is far more severe.

**Conviction and Sentence**:

In his motion, Lanier argues, he identifies several defendants whose sentences for allegedly comparable crimes were far less than his.

A 40-year sentence without the possibility of parole is a substantial punishment. Moreover, it is longer than at least some federal sentences imposed for murder.

For example, in United States v. Antoine, PWG-19-140, the defendant was involved in a drug trafficking organization in Baltimore and confessed to the intentional shooting and killing of an individual in relation to the drug conspiracy.

He pleaded to one count of conspiracy to distribute controlled substances and one count of discharging a firearm resulting in death during and in relation to a drug trafficking crime. Id. Although Antoine was the shooter, Judge Grimm imposed a total sentence of 270 months (22.5 years).

As Judge Blake recently observed, the average federal sentence for murder has declined in recent years. See, United States v. Bryant, 95-202-CCB-3, 2020 WL 2085471, at *5 n.8 (D. Md. Apr. 30, 2020) ("According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months.") (citing United States v. Redd, 444 F. Supp. 3d 717, 728 (E.D. Va. 2020));

10

United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2018, Fourth Circuit, available at (https://www.ussc.gov/sites/default/files/pdf/research-andpublications/federal-sentencing-statistics/state-district-circuit/2018/4c18.pdf), aff'd, at United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Indeed, the trend has continued since the time Bryant was decided: data from the United States Sentencing Commission reflects that in fiscal year 2020, the national average sentence for murder was 255 months, and the Fourth Circuit average was 271 months. See United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2020, Fourth Circuit, available at https://www.ussc.gov/sites/default/files/pdf/research-and publications/federalsentencing-statistics/state-district-circuit/2020/4c20.pdf.

In addition, Lanier avers that he is highly unlikely to reoffend or pose any threat to the community. In particular, he notes that he has been a mentor to his fellow inmates since he has been committed to the BOP. Further, during his time of incarceration and, moreover, he has been actively participating in programs and seeking positive change in prison. Further, he contends that he is ready to be a productive member of society.

As a result, Lanier has gained pro social skills and positive energy. He also reports he has a very strong connection with his family and friends who are ready, willing and able to help and assist him in getting a job.

To be sure, rehabilitation alone cannot justify compassionate release. United States v. Davis, CRIMINAL 4:08cr144, at *1 n.1 (E.D. Va. Jan. 25, 2022); 28 U.S.C. § 994(t). But, without question, the Court may consider as a result, Lanier' post-sentencing conduct to determine whether he has been rehabilitated during his term of imprisonment. See, Pepper v. United States, 562 U.S. 476, 492 (2011) (recognizing that a defendant's post-sentencing conduct "provides the most-up-to-date picture of [a defendant's] 'history and characteristics'") (quoting 18 U.S.C. § 3553(a)(1)).

## Lanier's Alleged Post-Sentencing Changes in the Law

Lanier also asserts that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is appropriate due to alleged changes in the law since the time of his sentencing.

First, Lanier suggests that changes in the law should compel this Court to engage in a considered review of the factors contributing to Lanier's sentence.

Second, Lanier claims that the Supreme Court's decision in Concepcion independently constitutes an extraordinary and compelling reason for this Court to reduce his sentence.

Lanier acknowledges that in United States v. Thacker, 4 F.4th 569 (7th Cir. 2021), the Seventh Circuit held that non-retroactive statutory changes or new judicial decisions cannot, either alone or in combination, constitute an "extraordinary and compelling reason" for compassionate release under 18 U.S.C. § 3582(c)(1)(A). See also United States v. Brock, 39 F.4th 462 (7th Cir. 2022); United States v. Martin, 21 F.4th 944 (7th Cir. 2021).

**Has the Supreme Court's decision in Concepcion; and the U.S. Sentencing Commission now "overruled" circuit decisions saying changes in law cannot provide a basis for 3582(c)(1)(A) sentence reduction?**

The Supreme Court has issued its decision. Concepcion v. United States, S Ct., 2022 WL 2295029 (June 27, 2022). The question before the Supreme Court was whether a district court must consider intervening changes of law (such as changes to the Sentencing Guidelines) or changes in fact (such as behavior in prison) in adjudicating a First Step Act motion. Concepcion, 2022 WL 2295029, at *4. The Court held that if a defendant is eligible for a reduced sentence under Section 404(a), the district court must consider (i.e., acknowledge) intervening changes of law and fact brought to its attention by the defendant in deciding whether to grant a reduction. See id. At *4, *12. In other words, just as this Court must do in a post-Booker initial sentencing proceeding, it must acknowledge nonfrivolous mitigation arguments raised by the defendant. The District Courts must consider intervening changes of law and fact when parties raise them.

In drafting this piece of legislation Congress recognized the long ongoing battle for prison reform due to the harshness of the federal sentences. Congress sought to allow the district courts to revisit sentences on a case-by-case basis and determine whether new facts and new laws, post facto, created "extraordinary and compelling" reasons to reduce a sentence, particularly in light of the insufferable restrictions of 28 U.S.C. Section 2244 (i.e. AEDPA). To cure this long lingering illness Congress carved out a form of "safety valve" for modifying sentences that was previously available via federal parole, which had been abolished.

Defendants that could not previously apply for relief based on changes in law such as Apprendi and Alleyne, which constituted a fundamental deprivation of a

constitutional right, due, primarily, to the AEDPA, can now seek justice from the district courts.

The sum of these parts is that the Supreme Court's ruling in Concepcion v. United States the district Courts now return to its pre-Comprehensive Crime Control Act status of again being empowered to modify sentences where it determines that "extraordinary and compelling" reasons exists. And Concepcion makes clear that it is for the district court to determine on a case-by-case basis what it deems extraordinary and compelling reviewing all new facts and changes in law that have occurred since the initial sentencing and applying the Section 3553(a) factors to the new set of facts and circumstances.

The instant petition is also asking for the conditions of Amendment 11, "First Step Act – Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c )(1)(A)" promulgated on April 5, 2023 by the United States Sentencing Commission, to be applied to his current petition to Reduce Sentence Pursuant to 18 U.S.C. § 3582 for Immediate Release in light of United States v. Concepcion and section 3553(a) factors made by Lanier in this case.

Amendment 11 provides (and/or will provide) the legal support which he has previously cited regarding the current work of the United States Sentencing Commission. The United States Sentencing Commission, which Congress in 28 U.S.C. § 994(t) expressly gave the responsibility to "describe what should be considered extraordinary and compelling reasons for sentence reduction," has expressly decided via its new amendments to § 1B1.13 that a "change in the law" legally can, and sometimes should, be the basis for a 3582(c)(1)(A) sentencing reduction. Specifically, here Two proposed changes directly address the issue on appeal:

**(b)(6) UNUSUALLY LONG SENTENCES**. If a defendant

received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason . . . .

**(c) LIMITATION ON CHANGES IN LAW**. Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement.

However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction . . . a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

Notably, when introducing the Commission's amendments to § 1B1.13, USSC Chair Reeves stressed in his statement that the term compassionate release "is a 'misnomer'" because § 3582(c)(1)(A) sets forth a more general "sentence-reducing tool" authorizing judges "to modify sentences whenever new 'extraordinary and compelling' reasons arise."

A brief account of the new amendment to guideline § 1B1.13:

The U.S. Sentencing Commission approved new guidelines that will expand federal inmates' ability to qualify for compassionate release from prison. The new policy, approved in a vote of 4-3, was part of a broader package of amendments, and represents the most sweeping criminal justice reforms the commission has enacted in more than four years....

The new compassionate release guidelines expanded the criteria for what can qualify as "extraordinary and compelling reasons" to grant compassionate release, and it will give judges more discretion to determine when a sentence reduction is warranted.

The policy "makes a systemic, structural change without congressional authorization," commission member Candice Wong said. Though there are lots of new and important elements to the new § 1B1.13, one issue that has generated a particularly interesting debate in the circuit courts (and before the Commission) is whether a district judge can rely on a "change in the law" to grant a 3582(c)(1)(A) sentencing reduction. This question has deeply divided the circuits; as discussed here, the Sixth Circuit a few months ago rendered a big divided en banc ruling in United States v. McCall which held, as a matter of statutory interpretation, "that nonretroactive changes in sentencing law cannot be 'extraordinary and compelling reasons' that warrant relief" pursuant to 3582(c)(1)(A).

But now the U.S. Sentencing Commission, which Congress in 28 U.S.C. § 994(t) expressly gave the responsibility to "describe what should be considered extraordinary and compelling reasons for sentence reduction," has expressly

decided via its new amendments to § 1B1.13 that a "change in the law" legally can and sometimes should be the basis for a 3582(c)(1)(A) sentencing reduction. Specifically, here is the interesting policy statement provision on this issue in the new guideline (with emphasis added):

"If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances".

In other words, the US Sentencing Commission has decided, contra to the position of the this Circuit and some other circuits, that a change in law can serve as an extraordinary and compelling reason for sentence reduction, though the Commission here limits such a "law-change" reason to cases in which a defendant has already served "at least 10 years" of an "unusually long sentence" and the law change "would produce a gross disparity" in sentencing outcomes.

Though one might well debate the wisdom and reach of how the new guideline seeks to limit when "a change in the law" can provide an extraordinary and compelling reason for sentence reduction, it is beyond debate that the US Sentencing Commission, the expert agency tasked expressly by Congress to "describe what should be considered" reasons for a 3582(c)(1)(A) sentence reduction, has now explicitly decided that at least sometimes a "change in law" CAN statutorily be a proper basis for a reduction under the statute.

Accordingly, the U.S. Sentencing Commission's promulgation of this new § 1B1.13 provision serves to functionally "overrule" all court precedents that nonretroactive changes in law cannot be the basis for a statutory sentence reduction under 18 U.S.C § 3582(c)(1)(A).

The new categories that could make an inmate eligible for compassionate release include:

•     if the prisoner is suffering from a medical condition that requires long- term or specialized medical care not being provided by the BOP and without which he or she is at risk of serious deterioration in health or death.

- if the prisoner is housed at a prison affected or at imminent risk of being affected by (an ongoing outbreak of infectious disease or an ongoing public health emergency declared by the appropriate federal, state, or local authority, and due to personal health risk factors and custodial status, he or she is at increased risk of suffering "severe medical complications or death as a result of exposure" to the outbreak.

- if the prisoner's parent is incapacitated and the prisoner would be the only available caregiver.

- if the prisoner establishes that similar family circumstances exist involving any other immediate family member or someone whose relationship with the prisoner is similar in kind to that of an immediate family member when the prisoner would be the only available caregiver.

- if the prisoner becomes the victim of sexual assault by a corrections officer.

- if a prisoner received an unusually long sentence and has served at least 10 years of the term of imprisonment, changes in the law (other than to the Guidelines) may be considered in determining whether an extraordinary and compelling reason exists, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

Lanier is a 32-year-old male who is currently in the custody of the Federal Bureau of Prisons ("BOP") serving his sentence. Lanier filed a motion requesting that his sentence be reduced pursuant to Title 18, United States Code, Section 3582(c)(1)(A), as amended by the First Step Act of 2018, based upon, if sentenced today, Lanier's sentencing exposure would have been dramatically lower after the passage of the First Step Act.

This package is made from post-consumer waste. **Please recycle.** again.

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

# PRIORITY MAIL EXPRESS®

## FLAT RATE ENVELOPE
### ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP





UNITED STATES POSTAL SERVICE®

PRIORITY MAIL EXPRESS®



FROM: (PLEASE PRINT)

Tommy Waive
P.O. Box 511
Buffalo NY

TO: (PLEASE PRINT)

Clerk of the Court
Southern District of NY
500 Pearl St.
New York, NY
10007